Patrick O'CARTER, Petitioner,

v.

C. R. HAGEN, Warden of the Federal Correctional Institution, La Tuna, Texas, Respondent.

No. 2138.

United States District Court
W. D. Texas,
El Paso Division.

June 3, 1960.

Patrick O'Carter, per se.

Lawrence L. Fuller, Asst. U. S. Atty., Western Dist. of Texas, El Paso, Tex., for respondent.

HENLEY, District Judge.

This is a habeas corpus proceeding instituted by Patrick O'Carter, who is now confined in the Federal Correctional Institution at La Tuna, Texas, as a conditional release violator. The officials at that institution have determined that petitioner is not entitled to be released until November 26, 1960, whereas petitioner contends that he should have been released in December 1959, and that his present confinement is illegal. The controversy hinges upon the number of days that petitioner was lawfully required to serve after being apprehended as a conditional release violator in 1958.

In view of the nature of the controversy the Court did not issue the writ as prayed by petitioner, but entered an order directing the respondent to show cause why the writ should not issue. Respondent complied with that order, and the cause is now before the Court upon the original and amended petition, the order to show cause, the response to said order, copies of the records of the Bureau of Prisons pertaining to petitioner, and a letter from respondent demonstrating how petitioner's release date has been computed.

The record discloses that on August 16, 1950, petitioner entered pleas of guilty to a number of indictments pending against him in the United States District Court for the Western District of Washington, Tacoma Division. He received sentences aggregating seven years and was remanded to the custody of the Attorney General. From the commencement of his sentences down to April 29, 1955, petitioner was confined in the United States Penitentiary at McNeil's Island, Washington, in Alcatraz Penitentiary in California, and at the Federal Prison Camp, Tucson, Arizona.

While confined in those institutions petitioner was credited with 672 days "statutory good time," 18 U.S.C.A. § 4161,

none of which he forfeited, and he earned an additional 167 days "industrial" and "camp" good time, 18 U.S.C.A. § 4162. The statutory good time allowed petitioner was computed by applying the applicable statutory rate of eight days per month to the eighty-four months which made up his entire seven-year aggregate term.

Petitioner's ultimate release date under his sentences was August 15, 1957. By subtracting from that date the 839 days of good time, both statutory and industrial, allowed petitioner it was determined that he was entitled to conditional release on April 29, 1955, and he was conditionally released on that date.

On February 23, 1956, a warrant for petitioner's arrest as a conditional release violator was issued. On November 21, 1958 petitioner went back into federal custody to complete the service of his sentence, as provided by 18 U.S.C.A. §§ 4164 and 4205, and since that time has been confined at La Tuna.

It was determined at La Tuna that petitioner was required to serve the entire 839 days previously allowed him as good time, which would give him a new ultimate release date of March 8, 1961. However, upon his re-imprisonment petitioner again became entitled to good time allowance, and he was credited with 220 days statutory good time, which gave him a possible release date of July 31, 1960.

Unfortunately for petitioner, he became involved in a conspiracy to smuggle beer into the institution and he also stole some government property. It having been administratively determined that petitioner was guilty of those offenses, it was adjudged that he forfeit 118 days of his statutory good time and 58 days of camp good time which he earned between November 1958 and April 1960.

As stated, when petitioner was reincarcerated it was determined that he would be eligible for release on July 31, 1960. After petitioner's violations referred to in the preceding paragraph the prison officials added 118 days to the July 31 date so his release date as now computed is November 26, 1960.

The Court has carefully audited the computations made by the prison personnel and finds them to be accurate and correct from a mathematical standpoint.[1] The question is whether such computations were based on a correct legal formula, and if they were not, whether the error was such as to entitle petitioner to release at this time. It should be noted in this connection that in the instant proceeding the Court is concerned only with whether petitioner is now entitled to his liberty. The Court is not concerned with whether he should have been released on any particular date in the past or with the precise date upon which petitioner is entitled to be released in the future.

Petitioner's pleadings were evidently prepared without the aid of counsel and are unskillfully drawn. For that reason petitioner's theory is not clearly stated, and the Court is unable to determine the process of calculation whereby petitioner reaches the conclusion that he should have been released in December 1959 rather than at some other particular time. Laying those considerations aside, however, it appears that petitioner contends that when he was returned to prison as a conditional release violator he was required to serve only the days of good time that he had *actually earned* prior to his conditional release, that he had in fact been credited with days of good time *in excess of those earned by him,* and that he should not be required to serve the excess days. The Court takes it that petitioner further contends that, if his release date had been properly determined after his return to prison, he would have been entitled to release prior to his difficulties in April of the current year.

1. It is noted that in computing the November 26, 1960 release date no account seems to have been taken of the 58 days camp good time that was forfeited, but petitioner would not seem to be in a position to complain of such omission.

Those contentions must be appraised in the light of the language of the governing statutes and of certain legislative history revealed in the House Report on Public Law 86–259, published in U. S. Code Congressional and Administrative News, 1959, p. 2518 et seq.

It appears that Congress first provided for good time allowances for federal prisoners in the Act of June 21, 1902, 32 Stat. 397. That statute provided for allowances of certain numbers of days of good time per month, varying with the length of a prisoner's term, and contained no restriction as to how such good time should be computed or credited. Those provisions appeared in the 1940 edition of Title 18 as Section 710.

During the 46 years between the adoption of the Act of June 21, 1902, and the official codification of Title 18 U.S.C.A., in 1948, it was the uniform policy of the Bureau of Prisons to make initial determinations of conditional release dates by crediting the respective prisoners at the commencement of their terms with the total amount of the statutory good time that they could possibly earn at the applicable rate spread over the entire length of their respective terms and without regard to the fact that prisoners who behaved themselves while in prison would not be required to serve their entire terms.

While that policy was of distinct advantage to prisoners who conformed to the rules and regulations, it contained at least a possibility of grave disadvantage to non-conforming prisoners since if such a prisoner committed an infraction in the early days of his imprisonment, he might conceivably forfeit not only the good time that he had actually earned up to the time of the infraction but also some or all of the good time that he might earn in the future, and as a result he might lose incentive for future good conduct. See Hunter v. Facchine, 10 Cir., 195 F.2d 1007, 1008.

To eliminate the possibility above mentioned, Congress amended the 1902 statute when it revised the criminal code in 1948 so as to provide that statutory good time should be "credited as earned and computed monthly." Under the 1948 statute, which was in force when petitioner was sentenced, when he was conditionally released, and when he was returned to federal custody to finish his term, the correct conditional release date of a prisoner was reached when the time actually served by him, plus his statutory good time computed on a month to month basis and actually earned by him, plus such other good time as he might earn, equalled the total length of his term. Northcutt v. Wilkinson, 5 Cir., 266 F.2d 2; Wooten v. Wilkinson, 5 Cir., 265 F.2d 211; Hunter v. Facchine, supra. As pointed out in Facchine, supra, the statutory good time had to be computed "monthly, as the months go by." [195 F.2d 1009.]

Notwithstanding the restriction contained in the 1948 code, it seems that the Bureau of Prisons continued to follow its old policy, or one closely akin to it, at least until the Facchine case was decided in 1952, and it may have continued to follow it after that decision. The Court makes that statement because in this particular case petitioner's original good time allowance appears to have been based on the total length of his term rather than on the number of months actually served by him, and his good time allowance after he was returned to prison seems to have been computed upon the same basis. See also Yates v. Looney, 10 Cir., 250 F.2d 956.

As pointed out, the original policy of the Bureau of Prisons operated to the advantage of prisoners who abided by the rules, whereas the policy prescribed by the 1948 statute worked to their disadvantage, or at least it would have had it been strictly followed. That situation prompted the Attorney General in 1959 to recommend to Congress that the restriction contained in Section 4161 of the 1948 code be removed so as to restore the former policy, as it was felt that any problems that might arise out of forfeitures of unearned good time could be handled administratively. The Congress

complied with the Attorney General's recommendation and amended Section 4161 so as to delete the restriction on good time computation. Act of September 14, 1959, Public Law 86–259, 73 Stat. 546.

■ It appears that the allowance to petitioner of 672 days statutory good time was based upon an application of the eight day monthly rate to the entire eighty-four months of petitioner's original term. Hence, under the 1948 statute the allowance was excessive. That does not mean, however, that when petitioner violated the terms of his conditional release he could not be compelled to serve the entire 672 days plus the 167 days of industrial good time that he had earned. The result of the excessive allowance of statutory good time was simply a premature release of petitioner from confinement, and upon his re-imprisonment he could be compelled to make up the time that he should have served originally before his conditional release. Northcutt v. Wilkinson, supra; Wooten v. Wilkinson, supra; Yates v. Looney, supra.

It further appears that when petitioner returned to prison his statutory good time was again computed in advance, and that the 220 days so computed were excessive. If the later forfeiture of 118 days had exceeded the statutory good time actually earned by petitioner up to the time of the forfeiture, the validity of the forfeiture to the extent of the excess over the good time actually earned might well be questioned. However, it appears from computation that by April 4, 1960, petitioner had actually earned more than 118 days statutory good time and for that reason was not prejudiced by the forfeiture.

■ From a consideration of all of the materials before it, the Court is convinced that petitioner is not entitled to release at this time.

It is, therefore, considered, ordered, and adjudged that the order to show cause heretofore entered be, and the same hereby is, vacated, and that the petition be, and it hereby is, dismissed.